IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

DANIEL BOOS,                              )
                                          )
            Petitioner,                   )
                                          )
      v.                                  )        CV 120-082
                                          )
JERMAINE WHITE, Warden,[1]                )
                                          )
            Respondent.                   )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at Telfair State Prison in Helena, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

This case challenges the validity of Petitioner's convictions for four counts of aggravated child molestation and three counts of child molestation as determined by a jury in Richmond County, Georgia, after a trial conducted from October 15 through October 18, 2012.

---

[1]The Court **DIRECTS** the **CLERK** to update the docket consistent with the above caption because the proper Respondent is Jermaine White, the current Warden at Telfair State Prison.  See Rule 2(a) of the Rules Governing § 2254 Cases.

(Doc. no. 10-11,  pp. 45, 224, 286,  <u>State v. Boos</u>, 2010-RCCR-01008 (Sup. Ct. Richmond

Cnty. Aug. 3, 2010).  The trial court entered a directed verdict on a fourth count of child

molestation.  <u>Id.</u> at 627.  Petitioner was sentenced as a recidivist to life in prison without parole

for the four aggravated child molestation convictions and twenty years for each child

molestation conviction, to run concurrently with each other and consecutive to the sentence

for aggravated child molestation.  <u>Id.</u> at 216, 686-87; <u>see also</u> doc. no. 1, p. 2.)  Retained

attorney Richard H. Goolsby, Sr., represented Petitioner at trial.  (Doc. no. 10-11, pp. 216,

286.)

Assistant Public Defender Alexia D. Davis represented Petitioner post-conviction.  (<u>Id.</u>

at 258; doc. no. 10-12, p. 1.)  The trial court denied the motion for new trial, concluding, *inter*

*alia*:  (1) there was sufficient evidence to support the jury's guilty verdicts; (2) Lorraine Fraijo

properly testified as an expert witness that the victim's demeanor and behavior during his

outcry was consistent with a victim of sexual abuse; (3) the testimony of Dr. Joseph Frey was

properly excluded because the proffered testimony did not address whether the victim's

demeanor was consistent with a victim of sexual abuse, "as this expert did not personally

examine the child; rather the proffered testimony was meant solely to comment on the

credibility of the accuser"; (4) Mr. Goolsby provided "effective and competent legal

representation," particularly with respect to calling witnesses and giving legal advice, and as

to Petitioner's wife, Amanda Boos, based on her "demeanor and manner testifying during the

motion for new trial hearing, that had she served as a witness during trial, her testimony would

not have been worthy of belief"; and (5) the trial court properly allowed the State to present

2

evidence of Petitioner's prior child molestation conviction.  (Doc. no. 10-11, pp. 282-83.)

On direct appeal, Ms. Davis raised two enumerations of error by the trial court:

(1)     [T]he court abused its discretion when it failed to allow the defense expert Dr. Frey to testify whether or not children make false allegations of sexual abuse and the possible reasons for such behavior; and

(2)     [T]he court abused its discretion when it failed to allow the defense expert Dr. Frey to opine on the complaining witness's behavioral patterns prior to his allegations against [Petitioner].

(Doc. no. 10-12, p. 6; doc. 10-14, pp. 4-8, Boos v. State, No. A17A1013 (Ga. Ct. App. Aug.

16, 2017) (unpublished).)  In its opinion, the Court of Appeals summarized the proceedings

related to Dr. Frey as follows:

At the jury trial, the nephew recounted that during the first six months of 2010, Boos repeatedly subjected him to oral sodomy, genital fondling, and pornographic materials.  Boos had committed these acts when alone with the nephew in various areas of Boos's residence or the family store.  In mid-June 2010, the nephew told his mother about the sexual abuse.

The mother testified that she reported her son's disclosure to his therapist and to law enforcement.  The mother also recounted that, prior to her son's outcry, he had been exhibiting behavioral issues at home and at school; after one such school episode, his mother had him homebound for the remainder of the school year.

Given the allegations of sexual abuse, the nephew underwent a forensic interview on June 18, 2010, during which he described sexual activities with Boos.  The interview was recorded and presented to the jury.

As part of his defense, Boos sought to discredit the nephew's accusations through expert testimony of a clinical psychologist.  The trial court conducted a hearing outside the presence of the jury to determine whether and to what extent the psychologist's anticipated testimony would be admissible.  At the outset of the hearing, the psychologist revealed that he was prepared to testify about the nephew's reliability or truthfulness. The trial judge remarked that the psychologist would not be allowed to render that opinion to the jury, but allowed the proffer to proceed.  The psychologist stated that he had not examined the

nephew but had reviewed certain of the nephew's school records, as well as a related psychological evaluation showing that the nephew had been diagnosed with a "major depressive disorder" and "intermittent explosive disorder." According to the psychologist, "the pattern of symptoms that are defined both in the psychological evaluation and in the school records are consistent with a finding of conduct disorder"[2] and that "one of the symptoms [of conduct disorder] is lying." Again, the trial judge expressed that he would not permit the psychologist to testify about "the truthfulness or lack of truthfulness of the victim in this case."

Throughout the proffer, the trial judge repeated that the defense would not be allowed to elicit the psychologist's opinion regarding the nephew's credibility. . . . Toward the end of the proffer, defense counsel urged that the psychologist be allowed to opine that the nephew suffered from a disorder, which "affect[s] a person's reliability as to whether or not they're truthful *in general*." (Emphasis supplied). The trial court rejected that proposition also.

Defense counsel elected not to call the psychologist as a trial witness, but presented to the jury other defense witnesses who expressed that the nephew had a bad reputation for truthfulness.

(Doc. no. 10-14, pp. 2-4.) The Court of Appeals of Georgia rejected Petitioner's arguments and affirmed his convictions. (See generally doc. no. 10-14.)

Petitioner next filed a *pro se* state habeas corpus petition on September 13, 2017, in Telfair County, and subsequently amended his petition five times. (See doc. nos. 10-1 through 10-6.) Relevant to the current federal petition, Petitioner raised the following claims in his state habeas proceedings:

(1)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal trial counsel's failure to conduct a thorough pretrial investigation regarding the mental evaluation of the alleged victim and failure to subpoena the doctor who conducted the psychological examination of the victim; and

---

[2]The psychologist clarified that he could not testify that the nephew actually had conduct disorder because he had not examined the child.

4

(2)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal trial counsel's failure to interview and subpoena for trial those teachers at [the victim's] school who encountered severe behavioral problems and truthfulness issues; and

(3)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal trial counsel's failure to competently advise Petitioner that he should testify in his own defense; and

(4)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal the trial court's erroneous ruling in denying trial counsel's motion for a mistrial when a forensic interviewer from child enrichment was allowed to testify to the alleged victim's truthfulness; and

(5)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal trial counsel's erroneous questioning of potential jurors during voir dire about the Petitioner's prior conviction and similar transactions, introducing the prior conviction during opening arguments, and then objecting after the prosecution began questioning witnesses about the prior conviction; and

(6)     Appellate counsel rendered ineffective assistance for her failure to raise on direct appeal the cumulative effect of trial counsel's errors, i.e., the failure to present stronger witnesses at trial, failure to conduct a psychological examination on the victim, failure to interview and produce school personnel, failure to advise Petitioner to testify in his defense, and the failure to request that opening and closing argument be transcribed.

(See id.; see also doc. no. 10-7.)  The state habeas court conducted an evidentiary hearing on April 19, 2018, (doc. no. 10-7, p. 1; doc. no. 10-11, p. 1), and denied relief in a Final Order filed on June 6, 2019, (doc. no. 10-7).  The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal ("CPC") without comment.  (Doc. no. 10-8; doc. no. 10-9, Boos v. Hall, No. S19H1442 (Ga. Feb. 10, 2020).)

Petitioner then timely filed the above-captioned § 2254 pro se petition, raising the

following claims for relief:

(1)    Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to have Dr. Frey conduct an examination and/or interview of the victim rather than attempting to have the expert witness testify based on his review of school records and a videotaped forensic interview of the victim, (doc. no. 1-1, pp. 8, 14); and

(2)    Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to interview and subpoena for trial school personnel who had encountered the severe behavioral problems displayed by the victim, which resulted in the victim's expulsion from school, and instead had Dr. Frey examine the various files and records generated by the school personnel, (id. at 9, 16); and

(3)    Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in failing to competently advise Petitioner that he should testify in his own defense because the admission of similar transaction evidence with accompanying testimony placed Petitioner in a situation where it was incumbent upon him to testify to refute the allegations against him and explain his rehabilitative efforts, (id. at 10, 52-53); and

(4)    Appellate counsel provided ineffective assistance in failing to argue the trial court erred in denying trial counsel's motion for a mistrial when the State expert witness, Ms. Fraijo, was allowed to testify as to the truthfulness of the victim, (id. at 11-12); and

(5)    Appellate counsel provided ineffective assistance by not raising trial counsel's alleged ineffectiveness in informing the jury during opening arguments about Petitioner's prior conviction and similar transaction before the trial court had ruled on the admissibility thereof, which resulted in the trial court overruling a subsequent objection by trial counsel when the State began questioning a witness about the prior conviction on the basis that trial counsel had opened the door for such questioning, (id. at 12-13, 52); and

(6)    Appellate counsel provided ineffective assistance by not arguing the cumulative negative effect of trial counsel's alleged multiple errors, i.e., the error alleged in Grounds One, Two, Three, and Five, along with the failure to call his wife, Amanda Boos, as a witness, resulted in an unreliable and fundamentally unfair outcome at trial, which violated

Petitioner's Sixth and Fourteenth Amendment rights, (id. at 13, 46-49, 58-59).

Respondent argues federal relief should be denied on all claims because the state habeas court's decision on the merits of Petitioner's claims deserves deference under 28 U.S.C. § 2254(d).  (See doc. nos. 9, 9-1.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."  Harrington v. Richter, 562 U.S. 86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

7

In <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003); <u>see also</u> <u>Woods v. Donald</u>, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a

claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.  DISCUSSION

Applying AEDPA deference to Petitioner's claims previously analyzed and rejected by the state habeas court, federal habeas relief is not warranted. See Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018) (requiring federal habeas court to review reasons of merits-based decision by state court and defer to those reasons if they are reasonable). The Georgia Supreme Court denied the request for a CPC in a two-sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the justices concur." (Doc. no. 10-9.)

9

Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  Wilson, 138 S. Ct. at 1192.

Also, as explained in detail above, the Court is guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1337.  Moreover, AEDPA requires the Court give deference to the state-court decision, and that deference must be "near its apex" when considering Strickland claims that turn on general, fact-driven standards. Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (2018) (per curiam).

### A.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best

criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc)). "Counsel will not be deemed unconstitutionally deficient because of tactical decisions, . . . , and [t]he presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (internal citations omitted).

To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690; Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). Strickland requires application

11

of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Khan v. United States, 928 F.3d 1264, 1273 (11th Cir.) (citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512). "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." Michael, 430 F.3d at 1319 (citations omitted)

As emphasized by the Eleventh Circuit:

[D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective. "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight. Rather, Strickland asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." . . . We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances.

12

Jenkins v. Comm'r, Ala. Dep't of Corr., 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted), *cert. denied*, Jenkins v. Dunn, No. 20-6972, 2021 WL 1951891 (U.S. May 17, 2021).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore, 575 F.3d at 1264 (explaining appellate counsel not required to raise every non-frivolous issue). Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264. Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision

14

applied <u>Strickland</u> incorrectly." <u>Bell</u>, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Barwick v. Sec'y, Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

"Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Richter</u>, 562 U.S. at 105. Stated otherwise, federal habeas corpus relief is available on a <u>Strickland</u> claim "only if the state habeas court *unreasonably* determined that trial counsel performed reasonably - *i.e.*, where there is no possibility fairminded jurists could disagree that defense counsel acted outside the range of professionally competent assistance. . . ." <u>Ledford v. Warden, Ga. Diagnostic Prison</u>, 975 F.3d 1145, 1158 (11th Cir. 2020) (internal quotation marks and citations omitted), *cert. denied*, No. 20-7804 (U.S. June 21, 2021). For Petitioner "to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 909 (11th Cir. 2021).

"Surmounting <u>Strickland's</u> high bar is never an easy task." <u>Richter</u>, 562 U.S. at 105 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)). Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Id.</u> (quotation marks and citations omitted); <u>see also Yarborough</u>

v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S. 2016) (per curiam) (internal quotations and citations omitted).

To summarize, for Petitioner to obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. That is, if fairminded jurists could reach differing conclusions, this Court owes deference to the state court decision, and federal relief is not available. Shinn v. Kayer, 592 U.S.-, 141 S. Ct. 517, 525 (2020) (per curiam) ("Perhaps some jurists would share those views [of a federal appeals court weighing evidence to reverse state court rejection of a Strickland claim], but that is not the relevant standard. The question is whether a fairminded jurist could take a different view. And the answer is yes."). Put another way, "the question becomes whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Raulerson v. Warden, 928 F.3d 987, 997 (11th Cir. 2019) (citation omitted), cert. denied, 140 S. Ct. 2568 (U.S. Mar. 30, 2020). "The Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

(citation omitted)); <u>Woods</u>, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

> **B.     The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground One Was Not Objectively Unreasonable**

In Ground One, Petitioner argues appellate counsel Ms. Davis provided ineffective assistance by not raising the alleged ineffectiveness of Mr. Goolsby in failing to have Dr. Frey conduct an examination and/or interview of the victim rather than attempting to have Dr. Frey testify based on his review of school records and a videotaped forensic interview of the victim. (Doc. no. 1-1, pp. 8, 14.)   Applying <u>Strickland</u>, the state habeas court rejected the claim, concluding Ms. Davis adopted a reasonable strategy to focus the appeal on the trial court's refusal to allow Dr. Frey to testify rather than argue - under a harder burden on appeal - Mr. Goolsby was ineffective in his use of Dr. Frey.  (Doc. no. 10-7, pp. 6-7.)

> **1.     Background**

Mr. Goolsby graduated in 1978 with a juris doctorate from University of Georgia School of Law and worked as a law clerk for a Chief Superior Court Judge in South Georgia for approximately one year after graduation.  (Doc. no. 10-11, p. 261.)  He then worked approximately two years each as an assistant District Attorney in South Georgia and in private practice.  (<u>Id.</u>)  Mr. Goolsby then worked as an assistant District Attorney in Augusta for approximately four years before taking a job as an assistant United States Attorney.  (<u>Id.</u>)  After spending approximately twenty years as a federal prosecutor, Mr. Goolsby returned to private practice for approximately five years before representing Petitioner at his 2012 trial.  (<u>Id.</u>)

17

Ms. Davis graduated from Tulane University School of Law and was admitted to practice law in Georgia in 2006. (Id. at 27.) At the time she testified at the state habeas hearing, she had tried approximately forty jury trials, which included sex cases, murders, and armed robberies, and served as a supervisor in the office of the public defender for the Augusta Judicial Circuit. (Id.) In preparation for the appeal, Ms. Davis reviewed the trial transcripts and discovery, asked several others to review the case record looking for potential issues, researched the potential issues, and corresponded with Petitioner about which issues to raise. (Id. at 26, 28-29.) Ms. Davis raised every issue she thought had merit, and she thought the two issues ultimately raised had the best chance of success. (Id. at 30.)

Specific to the choice not to raise ineffective assistance of trial counsel claims, Ms. Davis testified she has no issue with making such claims, but when choosing how to raise a claim on appeal, she is aware of the more difficult standard for proving ineffective assistance. Specifically, many decisions by counsel can be attributed to trial strategy, meaning she would have to establish not only that a choice made by Mr. Goolsby was either not strategic or a patently unreasonable strategy, but also that the outcome would have been different had counsel made a different choice. (Id. at 14, 29.) Ms. Davis believed Mr. Goolsby was prepared for trial with Dr. Frey's testimony, but the trial judge did not allow much of the information. (Id. at 8, 11.) In light of the trial judge's ruling, and recognizing the victim could not be forced to submit to an examination, Ms. Davis chose to raise the appellate issues as trial court error rather than ineffective assistance. (Id. at 11, 14, 29.)

18

###    2.    Analysis

The state habeas court concluded Ms. Davis followed a "reasonable strategy" to focus on the trial court's refusal to allow Dr. Frey's testimony rather than raise an effective assistance claim against Mr. Goolsby.  (Doc. no. 10-7, pp. 6-7.)  As the state habeas court explained, Dr. Frey wrote a memo, (doc. no. 10-11, p. 106), explaining he was prepared to discuss:  bipolar disorder symptomology, as well as conduct disorder in teenagers, and the impact of such conditions on truthfulness; and whether teenagers are always truthful regarding sexual molestation claims.  (Id.)  He based his opinion on an examination of school records and a video of the victim, but Dr. Frey did not personally examine the victim.  (Id. at 557-58.)  The State filed a motion in limine to prevent the defense from using Dr. Frey's testimony to impeach the victim's credibility.  (Id. at 104-05.)   The trial court refused to allow Dr. Frey's testimony because he had not examined the victim, intended to testify about psychological conditions with which the victim had not been diagnosed, and the jury did not need an expert to tell them children can lie.  (Id. at 559-69.)

Petitioner realleges in his federal petition the claim rejected in his state petition that Mr. Goolsby was ineffective in failing to have Dr. Frey personally examine the victim.  Yet, he has made no showing the victim would agree to such an examination.  Indeed, witnesses cannot be compelled to submit to an interview.  Dover v. State, 296 S.E.2d 710, 712 (Ga. 1982).  Nor can a molestation victim be forced to participate in an independent psychological evaluation. Collar v. State, 426 S.E.2d 43, 44 (Ga. 1992).  Petitioner argues Mr. Goolsby should have had Dr. Frey "attempt to examine" the victim.  (Doc. no. 1-1, p. 34; see also id. at 42 (arguing Mr.

Goolsby should have attempted to have Dr. Frey examine and evaluate the victim.)  Nor has

he argued, let alone established, that even if Dr. Frey had examined the victim, the trial court

would have allowed the testimony that had been excluded for the additional reasons that Dr.

Frey intended to testify about psychological conditions with which the victim had not been

diagnosed,[3] and the jury did not need an expert to tell them children can lie.  Absent a showing

of merit to an underlying ineffective assistance of trial counsel claim, there can be no valid

ineffective assistance of appellate counsel claim for not raising such a claim.  See Payne v.

Allen, 539 F.3d 1297, 1314 (11th Cir. 2008).

Given that Mr. Goolsby could not force the victim into the examination Petitioner

claims should have been arranged, and there has been no showing Dr. Frey's testimony would

have been allowed even if he had examined the victim, the record does not support a conclusion

the state habeas court's decision to reject this ineffective assistance claim was an unreasonable

application of Strickland or based on an unreasonable determination of the facts in light of the

evidence presented.  Ms. Davis followed a reasonable strategy of choosing not to pursue an

ineffective assistance claim based on a meritless argument that Mr. Goolsby should, or even

could, force the victim to meet with Dr. Frey.  Indeed, the victim testified at trial he had not

been examined by a doctor during the investigation of the case because his doctor was on

---

[3]The trial transcript also reveals an exchange between counsel and the trial judge
confirming the victim's school records - which had been made a sealed part of the record but not
admitted for jury consideration - do not indicate the victim had been diagnosed with  the illnesses
identified by Dr. Frey in his report.  (Doc. no. 10-11, pp. 360-61, 625-26.)

vacation, and the victim would "not allow" a different doctor to examine him.  (Doc. no. 10-11, p. 370.)

Even if Petitioner could show deficient performance, which he has not, he fails to show prejudice because he had not offered any evidence to show the appeal would have been different had Ms. Davis raised the claim he proposes.  Rather, he wants this Court to grade the performance of counsel and find their performance lacking because he believes there were other options for using Dr. Frey that would have been more favorable to him.  Selection and preparation of an expert is a quintessential strategic decision deserving deference, Ledford v. Warden, Ga. Diagnostic Prison, 818 F.3d 600, 650-51 (11th Cir. 2016), and AEDPA prohibits second-guessing Ms. Davis's choice to raise issues about Dr. Frey under the lower standard of trial court error as opposed to the higher standard of ineffective assistance against Mr. Goolsby.  See Jenkins, 963 F.3d at 1270.

In sum, applying the requisite AEDPA deference, the Court concludes Petitioner has not shown appellate counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).  Ground One provides no basis for federal habeas corpus relief.

**C.    The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Two Was Not Objectively Unreasonable**

In Ground Two, Petitioner argues Ms. Davis provided ineffective assistance by not raising the alleged ineffectiveness of Mr. Goolsby in failing to interview and subpoena for trial school personnel who had encountered the severe behavioral problems displayed by the victim, which resulted in the victim's expulsion from school, and instead had Dr. Frey examine the various files and records generated by the school personnel.  (Doc. no. 1-1, pp. 9, 16.) Applying <u>Strickland</u>, the state habeas court rejected the claim, concluding Petitioner failed to show the school personnel had relevant, admissible evidence, and therefore Ms. Davis was not ineffective for failing to raise a meritless ineffective assistance of trial counsel claim based on Mr. Goolsby's strategic decisions regarding which witnesses to call.  (Doc. no. 10-7, pp. 8-9.)

**1.    Background**

Ms. Davis raised every issue she thought had merit after reviewing the trial transcripts and discovery, asking several others to review the case record to look for potential issues, researching the potential issues, and corresponding with Petitioner about which issues to raise. (Doc. no. 10-11, pp. 26, 28-30.)  She thought the two issues ultimately raised as trial court error the had the best chance of success.  (<u>Id.</u> at 30.)  Specific to subpoenas for school personnel, Mr. Goolsby testified he did not think calling school personnel would have been necessary or helpful because "the Judge ruled . . . prior to trial that the trouble the [victim] had gotten into was not something that was going to be relevant or admissible at trial.  So there was no need to.  The Judge wouldn't have allowed them to testify . . . . "  (<u>Id.</u> at 262-63.)  Ms.

Davis testified she considered the issue of whether the teachers mentioned in the victim's school records should have been subpoenaed, but Mr. Goolsby told her it was a tactical decision, part of his trial strategy, not to subpoena the teachers.  (Id. at 14.)  She also testified that there was testimony at trial about the victim's behavioral problems at school that was presented to the jury via testimony from the victim's mother.  (Id. at 14, 402-03.)

   2.   **Analysis**

The state habeas court ruled Ms. Davis did not provide ineffective assistance because the issue of which witnesses to call generally constitutes trial strategy, and in light of Petitioner's failure to show the victim's teachers had relevant evidence the trial court would have admitted, Mr. Goolsby's strategy not to call the teachers had not been shown to be an unreasonable tactic.  (Doc. no. 10-7, pp. 8-9.)  As the state habeas court explained, "It is well established that the decision as to which defense witness to call is a matter of trial strategy and tactics, and that tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances."  Watkins v. State, 676 S.E.2d 196, 199 (Ga. 2009); see also Waters, 46 F.3d at 1512 ("Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess.").  Ineffective assistance of counsel cannot be based on "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified."  Foster v. Dugger, 823 F.2d 402, 406 (11th Cir. 1987).  "Even if in retrospect the strategy appears to have been wrong,

the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." Adams, 709 F.2d at 1445 (citations omitted).

Petitioner realleges in his federal petition the claim rejected in his state petition that Mr. Goolsby was ineffective in failing to interview and subpoena for trial school personnel who observed the victim's behavioral problems that resulted in his expulsion from school. (Doc. no. 1-1, pp. 9, 16.) Petitioner strenuously objects to Mr. Goolsby's stated reasons for not calling school personnel to testify because, according to Petitioner, the trial court never ruled school personnel would not be allowed to testify. (Id. at 22, 24-26.) Notably, however, Petitioner offers no explanation about what supposed information school personnel could offer, let alone does he argue such information would have led to a different outcome at trial. See Lupoe v. State, 794 S.E.2d 67, 78 (Ga. 2016) (explaining viable claims about counsel's failure to investigate other sources of information must include proffer about what additional information was available and how it would have made a difference; speculation will not suffice)   At best, he tries to tie a lack of information from school personnel to the trial judge's ruling on excluding testimony from Dr. Frey, but as discussed in detail above, there were multiple reasons why Dr. Frey's testimony was excluded, and Petitioner has not shown testimony or information from school personnel would have changed that determination.

Moreover, Petitioner's argument concerning his understanding of what the trial judge ruled appears to be incorrect. First, Mr. Goolsby recounted the trial judge ruled the prior trouble the victim may have gotten into was not relevant or admissible. (Id. at 262-63.) Indeed, the State's pretrial motion in limine sought to exclude evidence attacking the credibility of the

victim by showing he had "psychological and behavioral problems" and "has been forced by school officials to leave the public school system." (Id. at 101-03.)  Although a written ruling may not have been entered on the motion, the trial transcript reflects when the issue of the victim's school records showing behavioral issues was raised, the judge ruled the school records "probably should not have been released to you and I've told you in the past that I had some concerns about those records and you going into those records. You're doing indirectly what I told you can't do directly, which I told you not to go into those records."  Id. at 411.

Also, the victim's school records were made a *sealed* part of the record that was not admitted for the jury to consider, and in any event, did not indicate the victim was ever found to be diagnosed with the illnesses identified in Dr. Frey's report.  (Id. at 360-61, 625-26.) Petitioner fails to describe what relevant information school personnel could have offered if the information in school records about the victim's behavioral issues, presumably created by school personnel, was inadmissible.

Second, via other witnesses, Mr. Goolsby put information before the jury about the victim's problems at school and reputation for untruthfulness.  The victim's mother testified about the victim's problems at school that resulted in his expulsion, and his banishment from working at the flea market where the some of the events charged in the indictment occurred because the victim got caught stealing.  (Id at 402-03.)  Several other family members, including the victim's grandmother, also testified the victim had a bad, or "not the best," reputation for truthfulness and they would not believe his testimony under oath.  (Id. at 553-54, 597, 605.)

Petitioner presents nothing in these proceedings undermining the state habeas decision rejecting a claim of ineffective assistance based on the failure to challenge on appeal Mr. Goolsby's tactical decision not to subpoena school personnel.   He has provided nothing showing the strategy of counsel was so patently unreasonable that no competent attorney would have chosen it, Adams, 709 F.2d at 1445, let alone shown with a reasonable probability, that a more favorable outcome would have occurred had a different strategy been pursued. Petitioner offers nothing about additional information Mr. Goolsby may have gleaned from interviewing personnel when he already had access to the victim's school records.   Mr. Goolsby also learned of the victim's behavioral problems in school by talking with family members "long before" he ever obtained the disputed school records.  (Id. at 410-11.)   Absent a showing of merit to an underlying ineffective assistance of trial counsel claim, there can be no valid ineffective assistance of  appellate counsel claim for not raising such a claim.  See Payne, 539 F.3d at 1314.

In sum, applying the requisite AEDPA deference, the Court concludes Petitioner has not shown appellate counsel's performance fell outside the wide range of professional assistance.   See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).   Ground Two provides no basis for federal habeas corpus relief.

**D.      The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Three Was Not Objectively Unreasonable**

In Ground Three, Petitioner argues Ms. Davis provided ineffective assistance by not raising the alleged ineffectiveness of Mr. Goolsby in failing to competently advise Petitioner that he should testify in his own defense.  The need to so advise Petitioner purportedly arose because similar transaction evidence, with accompanying testimony, necessitated Petitioner refuting the allegations against him and explaining his rehabilitative efforts.  (Doc. no. 1-1, pp. 10, 52-53.)  Applying <u>Strickland</u>, the state habeas court rejected the claim, concluding Mr. Goolsby did not provide ineffective assistance with respect to Petitioner's decision not to testify, and therefore Ms. Davis was not ineffective for failing to raise a meritless ineffective assistance of trial counsel claim on appeal.  (Doc. no. 10-7, pp. 9-11.)

**1.      Background**

Specific to Petitioner's decision not to testify, Mr. Goolsby stated he discussed with Petitioner "a number of times the problem presented by the fact that he had a prior child molestation conviction" and discussed "many times" whether Petitioner wanted to testify; he also discussed the pros and cons of each option with Petitioner.  (Doc. no. 10-11, p. 263.)  At trial, Mr. Goolsby stated for the record that he and Petitioner "have discussed the pros and cons, the strategy, and he understands his rights.  I'm confident.  And for strategic reasons, he and he alone has made this decision [not to testify]."  (<u>Id.</u> at 503.)

Additionally, the trial judge reviewed with Petitioner his right to testify.  The judge explained Petitioner had the right to testify but no one could compel him to take the stand.  (<u>Id.</u>

at 502.)   The judge further confirmed Petitioner understood that he personally, not Mr. Goolsby, had to make the decision on whether to testify.  (Id.)  The judge explained if Petitioner did testify, he would be questioned not only by Mr. Goolsby but also by the prosecutor, and the judge explained if Petitioner did not testify, the jury would be instructed they could not use that decision against him.  (Id.)  Petitioner confirmed he understood his rights but did not want to testify.  (Id. at 502-03.)

During its deliberations, the jury presented three questions to the trial court:  (1) where was the victim's father; (2) did Petitioner get any help from the first act of molestation; and (3) did the witnesses who testified they did not know the details of Petitioner's first conviction not know why he was in jail?  (Id. at 760-62.)  Ms. Davis testified she was aware of the jury questions and acknowledged Petitioner could have answered the rehabilitation question had he testified.  (Id. at 18.)  She was also aware of the unsuccessful argument in the motion for new trial that Mr. Goolsby gave incomplete advice regarding the admission of Defendant's prior child molestation conviction and the detrimental impact this advice had on the decision whether to testify.  (Id. at 17-18, 255-56, 283.)

### 2.  Analysis

The state habeas court ruled Petitioner failed to show Mr. Goolsby provided ineffective assistance with respect to his advice and Ms. Davis did not provide ineffective assistance by failing to raise such a claim on appeal.  (Doc. no. 10-7, pp. 10-11.)  As the state habeas court explained, counsel's conduct and advice must be considered in the context of the facts known at the time, without "the distorting effects of hindsight."  Wallace v. State, 530 S.E.2d 721,

724 (Ga. 2000); see also Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1238 (11th Cir. 2011) (finding presumption of constitutionally adequate representation based on two principles: (1) performance not judged by benefit of hindsight, and (2) "trial advocacy is not a science, but an art; there are few 'right' answers in the proper way to handle a trial"). The state habeas court also based its decision on the finding Mr. Goolsby could not have reasonably anticipated the jury questions during trial, and the decision whether a defendant should testify involves many factors, such that Petitioner's decision to forego testifying was not patently unreasonable under the circumstances known at the time. Collins v. State, 686 S.E.2d 305, 309-10 (Ga. Ct. App. 2009); see also Bell, 535 U.S. at 700 (rejecting ineffective assistance claim based on tactical decision, after consulting with defendant, not to have defendant testify because of anger towards prosecutor and possibility of lashing out and alienating client in eyes of jury).

   With the benefit of hindsight, Petitioner now argues Mr. Goolsby provided ineffective assistance in advising him not to testify because the jury requested information Petitioner could have provided had he testified. According to Petitioner, the jury's question about rehabilitation after his prior conviction for child molestation shows "the case was close." (Doc. no. 1-1, p. 42; see also id. at 54.) Petitioner strenuously argues he could have provided testimony that he had received extensive rehabilitation through counseling and education classes and "led a clean and productive life" for twelve years. (Id. at 53.) These arguments do not overcome the presumption of correctness of the state habeas decision.

29

At the time Petitioner made his counseled decision not to testify, the information about his prior child molestation had been extensively presented to the jury through the testimony of Andrew Edward Carson.  Mr. Carson, a former special agent with the United States Army, Criminal Investigation Division in Giessen, Germany, in 1990, investigated allegations that Petitioner, an army specialist at the time, molested neighborhood children and Cub Scouts. (Doc. no. 10-11, pp. 476-89.)  Mr. Carson testified Petitioner admitted performing sexual acts with three children between the ages of six and ten years old.  (Id. at 483.)  Mr. Carson reviewed the State's admitted Exhibit 30 in detail, including the specific details of the oral sexual activity Petitioner admitted to engaging in with the young boys.  (Id. at 484-86; id. at 716-23, Exh. 30.) Mr. Carson also confirmed the conviction entered by the Department of the Army based on his investigation of Petitioner.  (Id. at 488; id. at 724-40, Exh. 31.)  Moreover, on the first day of trial, the court entered an order explaining the similar transaction evidence would be admitted for the purpose of demonstrating Petitioner's "bent of mind, course of conduct, lustful disposition toward young boys, and corroborating the victim's testimony."  (Id. at 194.)

Mr. Goolsby repeatedly reviewed with Petitioner the pros and cons of testifying and the problems presented by the prior child molestation conviction.  (Id. at 6, 503.)  When Mr. Goolsby expressed to the trial court Petitioner had, "for strategic reasons," decided not to testify, Petitioner did not make any statement of disagreement.  The judge also engaged in a colloquy with Petitioner about his decision, and Petitioner confirmed he had decided not to testify.  (Id. at 502-03.)  Petitioner cannot claim surprise that the similar transaction evidence would be presented to the jury, and it is only in hindsight he suggests a different strategy

regarding his testimony may have been more effective.  His argument fails because he offers nothing to show Mr. Goolsby could have predicted the content of the jury note, let alone that no reasonable attorney would have acted as Mr. Goolsby did under the circumstances.  See Jenkins, 963 F.3d at 1269-70.

Petitioner fails to overcome the presumption of competence of Mr. Goolsby's actions and advice at trial and of Ms. Davis's choice not to raise a meritless claim on appeal.  See Harvey, 629 F.3d at 1239.  It is only in hindsight Petitioner forms his argument that Mr. Goolsby pursued a wrong strategy in his advice that Petitioner should not testify.[4]  That is insufficient.  See Martin v. United States, 949 F.3d 662, (11th Cir. 2020) (recognizing evaluating attorney performance must avoid distorting effects of hindsight and rejecting ineffective assistance claim where counsel failed to accurately predict course of proceedings subsequent to advice regarding guilty plea options), cert. denied, 141 S. Ct. 357 (U.S. Oct. 5, 2020).

In sum, applying the requisite AEDPA deference, the Court concludes Petitioner has not shown appellate counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong

---

[4]The Court addresses in Part III(G) Petitioner's related argument concerning alleged error in not calling his wife, Amanda Boos, as a witness when she could have provided the information sought by the jury about Petitioner's rehabilitation efforts after his prior conviction.  (Doc. no. 1-1, pp. 56-57.)

presumption conduct falls within wide range of reasonable professional assistance).   Ground Three provides no basis for federal habeas corpus relief.

**E.    The State Habeas Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance Claim in Ground Four Was Not Objectively Unreasonable**

In Ground Four, Petitioner argues Ms. Davis provided ineffective assistance by not arguing on appeal that the trial court erred in denying Mr. Goolsby's motion for a mistrial when the State expert witness, Ms. Fraijo, was allowed to testify as to the truthfulness of the victim.  (Doc. no. 1-1, pp. 11-12.)  Applying <u>Strickland</u>, the state habeas court rejected the claim, concluding Ms. Fraijo did not improperly testify as to the truthfulness of the victim, and therefore Ms. Davis was not ineffective for failing to raise the issue on appeal.  (Doc. no. 10-7, pp. 11-12.)

**1**.    **Background**

Ms. Davis thought the two issues ultimately raised as trial court error had the best chance of success.  (Doc. no. 10-11, p. 30.)  Ms. Fraijo, the clinical coordinator at the Child Advocacy Center, conducted a forensic interview of the victim.  When the prosecutor asked Ms. Fraijo whether she looks for consistency in children's statements, Mr. Goolsby objected that the prosecutor was attempting to bolster his case.  (<u>Id.</u> at 415, 421.)  Mr. Goolsby also objected to any questions concerning conclusions or opinions about whether anyone was lying. (<u>Id.</u> at 422.)  The trial judge overruled the objections and immediately instructed the jury they were "the final deciders of what is true and what's not true in this case.  Nobody can come in

here and tell you in my opinion this is the truth and/or that's not the truth, and nobody will."
(Id.)

Ms. Fraijo then testified about the consistency in the victim's statements, and the factors she considered in reaching her conclusion, and the victim's resistance to suggestibility.  (Id. at 423-25.)   At the conclusion of Ms. Fraijo's testimony and the playing of a video of her interview of the victim, Mr. Goolsby moved for a mistrial on the basis Ms. Fraijo had invaded the province of the jury.  Mr. Goolsby argued she told "the jury that based on her experience and training this alleged victim . . . has been molested and that everything she's seen from the interview is consistent with that and that he's telling the truth and that her protocol support that she believes through his making a disclosure that he has, in fact, been molested."  (Id. at 427.) The prosecutor pointed out he specifically qualified his questions as "not asking whether you believed [the victim]," but rather queried what signs she looked for in an interview and whether those signs were present.  (Id.)  The trial judge overruled the defense motion, concluding Ms. Fraijo had not testified about whether the victim told the truth but rather about "how children process thinking at that age and how they respond in processing that thinking."  (Id. at 428.)

      **2.**    **Analysis**

The state habeas court ruled Ms. Davis was not ineffective for failing to challenge the denial of the motion for mistrial because Ms. Fraijo "did not testify as to the victim's truthfulness and provided her expert opinion about forensic interview techniques and children victims in general." (Doc. no. 10-7, p. 12.)  The state court explained identifying consistencies in a victim's statement does not amount to improper bolstering or indicate a truthful story by

the victim.  <u>Weaver v. State</u>, 784 S.E.2d 61, 65-66 (Ga. Ct. App. 2016), *overruled on other grounds*, <u>Quiller v. State</u>, 789 S.E.2d 391 (Ga. Ct. App. 2016); <u>see also</u> <u>Odom v. State</u>, 531 S.E.2d 207, 209 (Ga. Ct. App. 2000) ("[T]here is a world of legal difference between expert testimony that 'in my opinion, the victim's psychological exam was consistent with sexual abuse,' and expert testimony that 'in my opinion, the victim was sexually abused.")  Moreover, an expert witness is allowed to testify concerning an observation of "coaching, deception, or other phenomenon during forensic interviews."  <u>Canty v. State</u>, 733 S.E.2d 64, 66-67 (Ga. Ct. App. 2012); <u>see also</u> <u>Dority v. State</u>, 780 S.E.2d 129, 139-40 (Ga. Ct. App. 2015) ("[T]his Court has repeatedly held that a witness does not improperly bolster a victim's credibility by testifying that the witness saw no evidence of coaching." (citations omitted).)   Having reviewed the transcript, the state habeas court found Ms. Fraijo's testimony did not address the ultimate issue of victim credibility and did not invade the province of the jury.

Petitioner makes no effort to address the factual findings or case law upon which the state habeas court based its decision, relying instead only on his interpretation of what Ms. Fraijo's testimony meant.  Nor has Petitioner produced any case law supporting his contention the trial court erred in overruling the motion for mistrial, or establishing the state court's interpretation of state law was incorrect. Moreover, even though Petitioner's current ineffective assistance claim is one of constitutional dimension, this Court should "defer to the state's construction of its own law" when the federal ineffective assistance claim is based on counsel's failure to raise an issue of state law.  <u>Pinkney v. Sec'y, DOC</u>, 876 F.3d 1290, 1295 (11th Cir. 2017); <u>see also</u> <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate

courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard," Pinkney, 876 F.3d at 1295, the Court presumes the state habeas court knows, and correctly applied, Georgia law. The state court found Ms. Fraijo's testimony permissible under Georgia law. Counsel cannot be ineffective for failing to raise a meritless claim. See Nyhuis, 211 F.3d at 1344.

In sum, applying the requisite AEDPA deference, the Court concludes Petitioner has not shown appellate counsel's performance fell outside the wide range of professional assistance. See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance). Ground Four provides no basis for federal habeas corpus relief.

### F. The State Habeas Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Five Was Not Objectively Unreasonable

In Ground Five, Petitioner argues Ms. Davis provided ineffective assistance by not arguing Mr. Goolsby was ineffective when he informed the jury during opening arguments about Petitioner's prior conviction and similar transaction before the trial court ruled on admissibility. The trial court overruled a subsequent objection from Mr. Goolsby when the State began questioning a witness about the prior conviction on the basis Mr. Goolsby had opened the door for such questioning. (Doc. no. 10-11, pp. 12-13, 52.) Applying Strickland,

the state habeas court rejected the claim, concluding Mr. Goolsby did not provide ineffective assistance based on his reasonable tactical decision to control the time and manner in which the damaging information was presented to the jury, and therefore Ms. Davis was not ineffective for failing to raise a meritless ineffective assistance of trial counsel claim on appeal. (Doc. no. 10-7, pp. 15-16.)

### 1.    Background

The trial court entered an order on the first day of trial allowing the State to present the similar transaction evidence against Petitioner at trial, explaining the State had established Petitioner committed the offense and the evidence would be admitted to demonstrate Petitioner's "bent of mind, course of conduct, lustful disposition toward young boys, and corroborating the victim's testimony." (Doc. no. 10-11, pp. 88-89, 194.)  Prior to voir dire, Mr. Goolsby asked the trial court whether Petitioner's prior conviction would be allowed, and the judge confirmed that it would be.  (Id. at 290.)  After voir dire but before the jury was sworn, Mr. Goolsby preserved the objection concerning admission of Petitioner's prior child molestation conviction and stated because the court had already ruled the information would be admitted, "as a tactical matter after discussing it with [Petitioner], we did go ahead and raise that during voir dire."  (Id. at 330.)  Thus, as part of Mr. Goolsby's trial preparation, he was "absolutely" aware of the similar transaction evidence and discussed with Petitioner "a number of times the problem presented by the fact that he had a prior child molestation conviction." (Id. at 263.)

Ms. Davis testified that in general, the case law is clear that a "very wide span of information" about similar issues can be admitted in these types of case, and she believed Mr. Goolsby chose to bring up the prior conviction during voir dire "so he could be in control of that, instead of waiting for that to surprise the jury." (Id. at 24-25.) Ms. Davis also explained she often followed the same practice if she knows harmful information is going to be admitted; she tries to address it early on rather than make it seem like the defense is trying to hide something when the information eventually comes out. (Id. at 25.) She understood a subsequent objection by Mr. Goolsby was overruled because he opened the door to admission of the prior conviction, but pointed out the judge gave a limiting instruction prior to the testimony from the army investigator about Petitioner's prior conviction, (see Part III(D)(2)). As the evidence was ultimately admissible and the trial court gave a limiting instruction, Ms. Davis chose not to raise the issue on appeal. (Doc. no. 10-11, p. 25.)

## 2.    Analysis

The state habeas court ruled Petitioner failed to show Mr. Goolsby provided ineffective assistance with respect to the reasonable tactical decision to control the time and manner of presenting the information to the jury and that Ms. Davis did not provide ineffective assistance by failing to raise such a claim on appeal. (Doc. no. 10-7, p. 16.) As previously explained, counsel's conduct must be considered in the context of the facts known at the time, without "the distorting effects of hindsight." Wallace, 530 S.E.2d at 724; see also Harvey, 629 F.3d at 1238. Indeed, "a critical distinction exists between inadequate preparation and unwise trial strategy," and even if a strategy ultimately proves unsuccessful, that does not automatically

37

equate to a valid ineffective assistance of counsel claim.  <u>Sledge v. State</u>, 717 S.E.2d 682, 687

(Ga. Ct. App. 2011).   When counsel explains a reasonable strategy that includes putting

unfavorable information before the jury as a tactic in support of the overall defense strategy,

the strategy does not constitute denial of effective assistance.  <u>Id.</u> at 688; <u>see also</u> <u>Jones v.</u>

<u>State</u>, 755 S.E.2d 815, 817 (Ga. Ct. App. 2014) ("Trial tactics and strategy, no matter how

mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective

unless they are so patently unreasonable that no competent attorney would have chosen them."

(citation and punctuation omitted ).)

With the benefit of hindsight, Petitioner now argues Mr. Goolsby provided ineffective

assistance because he brought up Petitioner's prior child molestation conviction during voir

dire, prior to the Court ruling on the admissibility of the similar transaction evidence.   The

argument falters from the start, as the record reflects the trial court held a hearing on the State's

pretrial notice of intent to offer such evidence, and the trial judge ruled orally and in writing

that the evidence would be allowed.   (Doc. no. 10-11, pp. 88-89, 194, 230.)   Moreover,

Petitioner presents nothing to refute Mr. Goolsby's testimony  he was "absolutely" aware of

the similar transaction evidence and discussed with Petitioner "a number of times the problem

presented by the fact that he had a prior child molestation conviction."  (<u>Id.</u> at 263.)   Mr.

Goolsby confirmed on the record the decision to raise the issue during voir dire was a tactical

decision made in consultation with Petitioner.  (<u>Id.</u> at 330.)

In hindsight, Petitioner strenuously argues Mr. Goolsby should not have raised the issue

during opening statements, and instead should have waited for a ruling from the judge on

admissibility and made his objection at the time of admission of the evidence so that the limiting instruction would have been given the first time the damaging evidence came to light. (Doc no. 1-1, pp. 12, 46-47.)  Petitioner's argument fails as a basis for federal relief, however, because it amounts to a disagreement in hindsight with the strategy of experienced counsel regarding timing of addressing damaging evidence.  See Michael, 430 F.3d at 1320 (explaining deliberate choices of trial strategy made after consultation with client are presumptively correct, with an even stronger presumption when made by experienced trial counsel).

Petitioner offers nothing to show that no reasonable attorney would have acted as Mr. Goolsby did under the circumstances.  See Jenkins, 963 F.3d at 1270.  Indeed, Ms. Davis testified she often follows the same strategy of controlling the time and manner of introduction of damaging evidence. In explaining her decision not to raise an ineffective assistance claim against Mr. Goolsby, Ms. Davis also correctly identified the introduction of similar transaction evidence is "most liberally extended in cases involving sexual offenses."  Pareja v. State, 686 S.E.2d 232, 236 (Ga. 2009) (finding no abuse of discretion to admit allegation of child abuse that occurred twenty-six years prior to conviction on one count of child molestation).  Thus, even if the Court presumed for the sake of argument the trial court had not made a final ruling on admissibility, the likelihood of the jury hearing the details of Petitioner's prior child molestation conviction was strong.  Counsel acted to control the circumstances under which the jury heard the information.  Petitioner fails to overcome the presumption of competence of Mr. Goolsby's actions at trial and of Ms. Davis's choice not to raise a meritless claim on appeal.  See Harvey, 629 F.3d at 1239.

In sum, Petitioner fails to rebut the presumption of correctness of the facts upon which the state court based its decision concerning the circumstances under which Mr. Goolsby made his tactical decision, and he fails to show the state court's conclusion was an unreasonable application of Strickland.  There can be no prejudice from failing to raise a meritless claim on appeal.  See Nyhuis, 211 F.3d at 1344.  Applying the requisite AEDPA deference, the Court concludes Petitioner has not shown counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).  Ground Five provides no basis for federal habeas corpus relief.

**G.    The State Habeas Court's Application of Strickland to Petitioner's Ineffective Assistance Claim in Ground Six Was Not Objectively Unreasonable**

In Ground Six, Petitioner argues Ms. Davis provided ineffective assistance by not arguing the cumulative negative effect of Mr. Goolsby's alleged multiple errors resulted in an unreliable and fundamentally unfair outcome at trial, which violated Petitioner's Sixth and Fourteenth Amendment rights.  (Doc. no. 1-1, pp. 13, 46-49, 58-59.)  Petitioner identifies the errors alleged in Grounds One, Two, Three, and Five, along with the failure to call his wife, Amanda Boos, as a witness, as the cumulative errors warranting federal habeas corpus relief.  (See id.)  Applying Strickland, the state habeas court rejected the claim, concluding Petitioner failed to show ineffective assistance of counsel on any of the issues raised in this claim, and therefore Petitioner failed to show a cumulative effect which deprived him of a fair trial.  (Doc.

no. 10-7, pp. 17-18.)  Accordingly, Ms. Davis was not ineffective for failing to raise a meritless claim on appeal regarding cumulative error.  (Id. at 17.)

As discussed in detail above, Petitioner has not shown any ineffective assistance as claimed in Grounds One, Two, Three, and Five.  As to the assertion Petitioner's wife was not called as a witness but could have provided the information sought by the jury about Petitioner's rehabilitation efforts after his prior conviction, Mr. Goolsby testified he and Petitioner discussed the pros and cons of calling his wife to testify.  Petitioner ultimately decided it would be helpful to have his wife sitting in the courtroom through trial to show the jury she was supporting him and to help provide Mr. Goolsby with input about the progress of the trial.  (Doc. no. 10-11, p. 265.)  Also, Mr. Goolsby believed Petitioner's mother-in-law, the victim's grandmother, would be "a lot more effective witness" than Ms. Boos.  (Id.)  Indeed, the order denying the motion for new trial recounted that, based on Ms. Boos's "demeanor and manner testifying during the motion for new trial hearing, that had she served as a witness during trial, her testimony would not have been worthy of belief."  (Doc. no. 10-11, p. 283.)

The state habeas court determined Petitioner failed to show Mr. Goolsby made an unreasonable tactical decision in not calling Ms. Boos to testify.  (Doc. no. 10-7, pp. 17-18.)  Petitioner again presents in hindsight his version of a potential different strategy, but he has not shown the strategy employed by Mr. Goolsby based on the circumstances at the time of trial was unreasonable.  See Waters, 46 F.3d at 1512 ("Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [the Court] will seldom, if ever, second guess.").  As discussed in detail above, Mr. Goolsby could not have anticipated the jury note

concerning rehabilitation after his prior conviction, and the defense had the benefit of Ms. Boos in the courtroom supporting her husband throughout the trial.   Petitioner offers nothing to show that no reasonable attorney would have acted as Mr. Goolsby did under the circumstances concerning Ms. Boos.  See Jenkins, 963 F.3d at 1269-70.

Petitioner points out that after the state habeas court denied his cumulative error argument, the Georgia Supreme Court changed forty years of prior case to allow a cumulative error claim.  (Doc. no. 1-1, pp. 47-49 (citing Lane v. State, 838 S.E.2d 808 (Ga. 2020).)  In Lane, the court ruled, "We hold that the proper approach instead is to consider collectively the prejudicial effect, if any, of trial court errors, along with the prejudice caused by any deficient performance of counsel."  Id. at 815.  While Petitioner correctly identifies a change in the law, it does him no good because he has not established any trial court errors or prejudice caused by any deficient performance of counsel.  Indeed, there has been no showing of deficient performance by either of the experienced attorneys who represented Petitioner at trial and on direct appeal.

As Petitioner has not shown an error of constitutional dimension as to any of his federal claims, he cannot show the cumulative effect of the errors he alleges resulted in fundamentally unfair state criminal proceedings.  See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (explaining cumulative error doctrine provides aggregation of non-reversible errors can result in denial of constitutional right to fair trial which requires reversal, but when no claim of error or prejudice has any merit, there is nothing to accumulate and no reversal to

42

be had); see also Cohen v. Inch, No. 18-20845-CV, 2020 WL 4741947, at \*11 (S.D. Fla. July 13, 2020) (recognizing the Supreme Court and Eleventh Circuit have never recognized ineffective assistance of counsel claims as basis for application of cumulative error doctrine, but even if doctrine applied to such claims, lack of viable ineffective assistance claims precluded finding of denial of constitutional right to fair trial), *report and recommendation adopted sub nom.* Cohen v. Fla. Dep't of Corr., No. 18-20845-Civ, 2020 WL 4736405 (S.D. Fla. Aug. 14, 2020).

In sum, Petitioner fails to rebut the presumption of correctness of the facts upon which the state court based its decision concerning the circumstances under which Mr. Goolsby made his tactical decision regarding Ms. Boos.  He also fails to show the state court's conclusion that Ms. Davis was not ineffective in failing to raise a meritless cumulative error claim was an unreasonable application of Strickland.  There can be no prejudice from failing to raise a meritless claim on appeal.  See Nyhuis, 211 F.3d at 1344.  Applying the requisite AEDPA deference, the Court concludes Petitioner has not shown counsel's performance fell outside the wide range of professional assistance.  See Strickland, 466 U.S. at 689 (requiring highly deferential judicial scrutiny of counsel's performance without distorting effects of hindsight and application of strong presumption conduct falls within wide range of reasonable professional assistance).  Ground Six provides no basis for federal habeas corpus relief.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be

43

**ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 20th day of July, 2021, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

44